```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
HEARTLAND PAYMENT SYSTEMS, INC.,

                            Plaintiff,
                                                    REPORT AND
                                                    RECOMMENDATION
            - against -                             10-cv-1739 (ADS) (AKT)

ISLAND PRIDE HOMES, INC. and
SALVATORE PANE,

                            Defendants.
----------------------------------------------------------------------X
```

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

    I.    **PRELIMINARY STATEMENT**

Plaintiff Heartland Payment Systems, Inc. ("Plaintiff" or "Heartland") commenced this diversity action against Defendants Island Pride Homes, Inc. ("Island Pride") and Salvatore Pane (collectively, "Defendants") for breach of contract, an account stated, and unjust enrichment. The Complaint was filed on April 20, 2010. DE 1. After Defendants failed to answer or otherwise respond to the Complaint, the Clerk entered a default and Plaintiff moved for default judgment. *See* DE 6, 9. Judge Spatt granted the motion for default judgment against both Defendants on February 9, 2011 [DE 11] and referred the matter to me for an inquest to determine and recommend what damages, if any, are appropriate in this matter, including any costs and attorney's fees.

In support of its claim for damages, Plaintiff had submitted two declarations of Anne Gordon, Plaintiff's executive director of service center operations [DE 9-10, 13][1] dated November 4, 2010 and March 18, 2011. Plaintiff also submitted the declaration of Attorney David Blansky [DE 12].[2] On June 8, 2011, this Court issued an Order noting that the documents submitted in conjunction with the motion for a default judgment had been received and that these materials did not adequately authenticate the "Loss Chart" submitted as support for the damage claim and did not explain what the document represents. *See* DE 17. The Court therefore directed Plaintiff to submit a further declaration from someone with personal knowledge describing how the document was kept in the ordinary course of business and explaining what the information on the Loss Chart represents. DE 17. Plaintiff filed a supplemental declaration by Ms. Gordon on July 8, 2011 which provided most of the requested information. *See* DE 19.

Plaintiff seeks an award of damages for the principal sum of $146,255.59 for the breach of contract, account stated, and unjust enrichment claim, in addition to post-judgment interest at a rate of nine percent (9%) per annum and attorney's fees, costs and expenses in the sum of $4,483.95. DE 12 ¶ 8. The principal amount reflects amounts owed to Heartland in exchange for credit card payment processing services provided to Island Pride. For the reasons set forth

---

[1] The November 4, 2010 Gordon declaration contains numerous references to a company called Visit Premiere and a reference to an individual named "Campanella." The Court assumes that references to this company and individual were made in error as a result of Plaintiff's counsel "cutting and pasting" text from an unrelated declaration and will therefore not consider the statements contained in the November 4 declaration.

[2] The version attached to Ms. Gordon's March 18, 2011 declaration includes nine additional items missing from the version attached to the Complaint. DE 13 ¶ 2.

below, I respectfully recommend that Plaintiff be awarded damages in the total amount of $149,276.99.

II. **PERTINENT FACTS**

Plaintiff is a New Jersey corporation that provides credit card processing services to merchants in the United States and Canada. *See* Compl. ¶¶ 4, 7. Plaintiff's services involve "facilitating the exchange of information and funds between merchants and cardholders financial institutions, [and] providing electronic payment processing services to merchants . . . ." *Id.* ¶ 7. In essence, Plaintiff acts as a middleman between a merchant such as Island Pride and a card issuer ("Card Issuer") such as Visa or American Express when a customer of the merchant disputes a charge incurred by the merchant with the Card Issuer.

In November 2007, Island Pride completed a merchant services application to utilize Plaintiff's services and thereby obligated itself to the terms and conditions of Plaintiff's Merchant Processing Agreement ("MPA").[3] *See id.* ¶¶ 8, 10. In the application, Defendant Salvatore Pane agreed to "unconditionally and irrevocably guarantee . . . the full and prompt payment when due of all obligations of every kind and nature arising directly or indirectly out of the [MPA]."[4] Compl., Ex. A at 4.

One of the services Island Pride purchased was "Chargeback" services. As defined in the Agreement, a "Chargeback" is "the procedure by which (i) a sales Transaction (or disputed portion thereof) is returned to [the Plaintiff] by a Card Issuer because such item does not comply

---

[3] A copy of the MPA is attached to the Complaint [DE 1] as Exhibit B.

3

with the Card Issuer's applicable rules or operating regulations or for any other reason as provided in [the MPA] and (ii) the Merchant's Account is debited for such return." MPA § 2.11. The MPA sets forth a procedure by which Island Pride could dispute Chargebacks, but if Island Pride failed to do so, it was obligated to pay Plaintiff any fees or fines or imposed on Plaintiff by a Card Issuer in connection with the Chargeback. *See id.* §§ 4.28 - 4.30.

Island Pride was to fund and maintain an account for the purpose of debiting fees associated with Chargebacks and other fees and charges allowed under the MPA. *See* MPA §§ 2.1; 4.22. Island Pride was also to fund and maintain a reserve account from which Plaintiff was authorized to withdraw funds owed by Island Pride to Plaintiff in connection with the MPA. *Id.* § 8.2. If Island Pride's funds in the reserve account were insufficient to cover the "Chargebacks, adjustments, fees and other charges due from [Island Pride]," Island Pride agreed to promptly pay Plaintiff any deficiency upon request. *Id.* § 8.4.

Initially, when a customer initiated a Chargeback, the Card Issuer would debit Plaintiff's account for a Chargeback. *See* July 8, 2011 Supplemental Declaration of Anne Gordon [DE 19] ("Gordon Supp. Decl.") ¶ 19. Plaintiff would then attempt to debit the charge from Island Pride's merchant account. *Id.* Between August 12, 2009 and June 10, 2010,[5] Plaintiff incurred approximately $145,000 in Chargebacks and related fees on Island Pride's behalf that Plaintiff was unable to debit from Island Pride's merchant account because the debit was rejected for insufficient funds. *Id.* ¶¶ 18-19. Defendant Pane, as guarantor of Island Pride, also failed to

---

[5] Ms. Gordon's supplemental declaration states that the charges were incurred between August 12, 2009 and July 10, 2010. Gordon Supp. Decl. ¶ 18. The latest charge reflected on the Loss Chart, however, is June 10, 2010. *Id.*, Ex. A.

4

provide reimbursement. Compl. ¶ 23.

### III. LEGAL STANDARD

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Restaurant Corp.*, No. 06 Civ. 1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)). A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05 Civ. 0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)). The only question remaining, then, is whether Plaintiff has provided adequate support for the relief it seeks. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. The moving party need only prove "that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Id.* at 159.

In determining damages not susceptible to simple mathematical calculation, Federal Rule of Civil Procedure 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Arctect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

## IV. DISCUSSION

### A. Principal

Under New Jersey law, which governs the MPA, *see* § 15.12,[6] the correct measure of damages for breach of contract is the expectation measure or the "benefit of the bargain." *See Donovan v. Bachstadt*, 453 A.2d 160, 165 (N.J. 1982).[7] Under the MPA, Plaintiff was entitled to be reimbursed for fees and fines relating to Chargebacks to Island Pride. *See* MPA § 4.28. The Loss Chart, annexed as Exhibit A to the July 8, 2011 Gordon Supplemental Declaration, is compiled from data gathered from Plaintiff's "Heartland Passport System" and servicing site which Plaintiff maintained in the ordinary course of its business. *See* Gordon Supp. Decl. ¶¶ 18, 19, 22.

The majority of the items on the Loss Chart reflect the actual Chargebacks, i.e., the disputed charges by customers of Island Pride that Island Pride did not timely contest, causing the Card Issuer to credit the customer and charge the Plaintiff. The Chargebacks on the Loss Chart total $137,446.21.

The Loss Chart contains two entries reflecting "Stmt Fees" totaling $1,445.05. According to the Gordon Declaration, these reflect "statement fees permitted under [MPA]." *Id.*

---

[6] The MPA also contains a forum selection clause mandating that all actions relating to it be brought in specific New Jersey Courts. MPA § 15.13. The applicability of a forum selection clause is not a jurisdictional matter and a party may waive its right to enforce such clause, which Plaintiff has done by filing suit in the Eastern District of New York. *See Am. Int'l Group Europe S.A. (Italy) v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369, 378-79 (S.D.N.Y. 2010).

[7] In addition to its breach of contract theory, Plaintiff also seeks relief under theories of an account stated and unjust enrichment. Because the Court finds that Plaintiff is entitled to the principal amount of damages sought under a breach of contract theory, the Court need not adress the other theories.

¶ 20.  Although the MPA provides that Island Pride is responsible for various fees, *see, e.g.,* ¶¶ 4.28, 4.30, 5.11, 6.1,[8] the MPA does not mention statement fees.  I have already provided Plaintiff with an opportunity to explain the meaning of "Stmt Fees" and Plaintiff has not done so.  *See* DE 17.  Thus, I find that there is not sufficient evidence to support an award of damages for the Stmt Fees.

There is also a $5,964.33 entry for "Charge Credit."  According to Plaintiff, this reflects a refund or price adjustment issued to a customer by Island Pride which was rejected by Island Pride's bank for insufficient funds.  *Id*.  Although Plaintiff does not provide any details surrounding the refund or price adjustment, the MPA provides for several situations in which a customer may receive a refund for which Island Pride is ultimately liable to Plaintiff.  *See* MPA § 4.27.  Given that Plaintiff is entitled to all reasonable inferences from the evidence it offers, I find that there is sufficient evidence that Plaintiff is entitled to reimbursement for the Charge Credit entry.

Finally, there is a $1,400 entry for "Pre-Comp."  Ms. Gordon explains that this transaction is "essentially a Chargeback made later in the [Chargeback] process."  Gordon Supp. Decl. ¶ 20.  Since Ms. Gordon has demonstrated her familiarity with Plaintiff's business procedures and operations, the Court accepts her explanation of the nomenclature used by Plaintiff in recording Chargebacks.

Based on the information provided in the Loss Chart and the Gordon Declarations, it is my recommendation that Plaintiff be awarded $144,810.54 in principal damages.  This sum

---

[8]  The Court notes that the Agreement refers to a "Schedule of Fees" (¶ 6.1) that was not provided to the Court.

includes the amounts listed on the Loss Chart under the entries for Chargebacks, Charge Credits, and Pre-Comps, but not for Stmt Fees.

### B. Post-Judgment Interest

Plaintiff requests post-judgment interest on the principal amount at the rate of nine percent (9%) per annum. *See* March 17, 2011 Declaration of David A. Blansky, Esq. in Connection with Calculation of the Amount of the Default Judgment ("Blansky Decl.") [DE 12] ¶ 8. In a diversity case, although prejudgment interest is governed by state law, "post judgment interest is governed by federal statute," *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008). The federal statute, 28 U.S.C. § 1961(a), provides for interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding[] the date of the judgment." Post-judgment interest is mandatory and accrues from the date of entry of judgment. *Schipani*, 541 F.3d at 165.

Although parties may override the statutory interest rate through clear and unambiguous language, the inclusion of a choice of law provision in a contract does not suffice. *See Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004). Thus, the parties' inclusion of a New Jersey choice of law clause does not affect the application of the rate set forth in 28 U.S.C. § 1961(a). The Court also notes that even if state law applied to the post-judgment interest award, nine percent is the New York interest rate, not the applicable New Jersey rate.[9]

---

[9] The New Jersey post-judgment interest rate calculation involves the average rate of return, for the corresponding preceding fiscal year terminating on June 30, of the State of New Jersey Cash Management Fund. *See* New Jersey Rules of Court. R. 4:42-11.

*See* New York Civil Practice Law and Rules § 5004. Pursuant to 28 U.S.C. § 1961, the federal post-judgment interest rate is posted on the U.S. Courts Web Page on Post-Judgment Interest Rates (www.utd.uscourts.gov/documents/judgpage.html). As of August 26, 2011, the published rate is .10%.

In light of the foregoing, I respectfully recommend that Plaintiff be awarded post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a).

### C. Attorney's Fees and Costs

Plaintiff also requests reimbursement of attorney's fees and costs incurred in this litigation. Blansky Decl. ¶ 7. Plaintiff's counsel has provided no case law to support his claim for this award. The Court must follow state law in regard to the award of attorney's fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 259 n.31 (1975) ("state law denying the right to attorney's fees or giving right thereto, which reflects a substantial policy of the state, should be followed") (internal quotations omitted). "Although New Jersey generally disfavors the shifting of attorneys' fees, a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract." *Packard-Bamberger & Co., Inc. v. Collier*, 771 A.2d 1194, 1202 (N.J. 2001) (internal citation omitted).

The MPA provides that:

> In any judicial or arbitration proceedings arising out of or relating to this Agreement, including but not limited to these [sic] actions or proceedings related to the collection of amounts due from merchant, the providing party shall recover, in addition to all damages awarded, all court costs, fees and expenses of experts and reasonable attorney's fees.

9

¶ 15.8 (emphasis supplied). The Court finds that a reasonable interpretation of "providing party" is the party who receives a damages award and expends costs and fees in connection with securing the award. As the "providing party" in this action, Plaintiff is entitled to costs and attorney's fees.

### 1. Amount of Attorney's Fees

Plaintiff requests attorney's fees in the amount of $3,332.50. Courts within the Second Circuit determine an appropriate award of attorney's fees according to the standard of a "presumptively reasonable fee." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183, 190 (2d Cir. 2008). This number should represent "what a reasonable, paying client would be willing to pay" for legal services rendered, and a court should consider the following factors in its calculation:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id.* at 184. The "presumptively reasonable fee" is comprised of a "reasonable hourly rate multiplied by a reasonable number of expended hours." *Finkel v. Omega Comm'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citations omitted). "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates

charged." *Id.* (citing *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir.1983)).

To determine reasonable hourly rates, the Court notes this Circuit's adherence to the forum rule which states that district courts should generally use the prevailing hourly rates in the district where it sits. *See Polk v. N.Y. State Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir. 1983). "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing [market rates] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). The Court must also, "in exercising its considerable discretion," consider the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)[10] and remain mindful that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill,* 522 F.3d at 190.

In 2011, the Second Circuit affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour. *Konits v. Karahalis*, No. 10-2157-cv, 2011 WL 310318, 409 Fed. Appx. 418, 422-23 (2d Cir. 2011). Similarly, another court has observed that "reasonable fees in this

---

[10]   The *Johnson* factors are:(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability"' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." 488 F.2d at 717-19.

district vary from $200 to $375 per hour for partners and $100 to $295 per hour for associates" and $70 to $80 for paralegals or legal assistants. *Penberg v. HelathBridge Mgmt.*, No. 08 CV 1534, 2011 WL 1100103, at *6-7 (E.D.N.Y. March 22, 2011).

To determine whether the number of hours spent by Plaintiffs' counsel was reasonable, the Court must "'use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" *Fox Indus., Inc. v. Gurovich,* No. CV 03-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation . . . ." *Cho v. Koam Medical Servs. P.C.,* 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)). A party seeking an award of attorney's fees bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Id*. at 209 (internal citations, quotation marks, and alteration omitted).

The law firm of Lamonica, Herbst & Maniscalo, LLP, counsel for Plaintiff, billed for the services of Attorney Blansky at a rate of $375 per hour and at a rate of $100 per hour for the services of Paralegal Danielle Schnettler. Blansky Decl., Ex. C. Plaintiff does not provide information about his level of seniority or experience to assist the Court in determining the reasonableness of the fee charged. However, in looking to the Lamonica Herbst & Maniscalco, LLP website (www.lhmlawfirm.com), the Court finds that David Blansky is a partner in the firm

who received his law degree in 1997. He previously worked as an Assistant District Attorney in Nassau County for approximately four years and has been employed by Lamonica Herbst & Maniscalco, LLP since 2004, thereafter having been made a partner in 2007. Mr. Blansky is also currently Chair of the Bankruptcy Law Committee of the Nassau County Bar Association. Based on this information, the Court finds that the $375 hourly rate for time billed by Attorney Blansky is reasonable and is within the range of average rates charged in this district.

Ms. Schnettler's rate is somewhat more problematic. Plaintiff has submitted no information reflecting Ms. Schnettler's title or position. Based on the description in the billing records of the tasks Ms. Schnettler undertook – "Conference with David A. Blasnksy re commencement of lawsuit," "Prepare and make copies of exhibits for lawsuit," and "Travel to District clerks office to file lawsuit" – it appears that Ms. Schnettler is a paralegal/legal assistant (or at least was operating in that capacity in connection with this matter). *See id.* at 1-2. As noted above, the reasonable rate for paralegals or legal assistants in this district is $70 to $80. I find that a reasonable rate for Ms. Schnettler's services is $80 per hour.

After a review of the log submitted by Plaintiff's counsel, the Court does not identify any unreasonable, excessive or unnecessary time that should be excluded. Accordingly, the Court finds that all 8.7 hours of Attorney Blansky's time and all .7 hours of Ms. Schnettler's time are properly included in calculating attorney's fees. As such, I respectfully recommend to Judge Spatt that Plaintiff be awarded attorney's fees in the amount of $3,318.50 (*i.e.*, $375 x 8.7 = $3,262.50 + $80 x .7 = $56).

### 2. Costs

Plaintiff seeks costs and expenses totaling $1,151.45. Blansky Decl. 12 ¶ 7, Ex. C. These costs include postage, court filing fees, copying costs, and process server costs. *Id.*, Ex. C. Awards of attorney's fees "normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987). In addition, the MPA specifically provides for cost shifting. ¶ 15.8. I have reviewed all of the charges and find that they consist of ordinary expenses associated with this type of action that a fee-paying client would typically pay. Accordingly, I respectfully recommend to Judge Spatt that Plaintiff be awarded costs in the amount of $1,151.45.

### V. CONCLUSION

Based upon the foregoing information, I respectfully recommend to Judge Spatt that Plaintiff be awarded damages in the amount of $149,280.49, broken down as follows:

| | |
|---|---|
| Principal damages: | $144,810.54 |
| Attorney's fees: | $3,318.50 |
| Costs: | $1,151.45 |
| Total: | $149,280.49 |

I further recommend that Plaintiff be awarded post-judgment interest at the rate set forth in 28 U.S.C. § 1961 as of the date of the entry of final judgment.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file

written objections.  *See also* Fed. R. Civ. P. 6(a) and (e).  Such objections shall be filed with the Clerk of the Court via ECF.  A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Arthur D. Spatt, and to the chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Counsel for Plaintiff is directed to serve a copy of this Report and Recommendation on the Defendants forthwith and to file proof of service on ECF.**

**SO ORDERED.**

Dated: Central Islip, New York
August 31, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge